**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JANET L. SEI,** | ) | |
|     Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
|     Defendant/Counterclaim-Plaintiff. | ) | 04 C 6446 |
| **UNITED STATES OF AMERICA,** | ) | |
|     Defendant/Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **KEITH A. SEI,** | ) | |
|     Counterclaim-Defendant, | ) | |

## MEMORANDUM AND ORDER

The parties' cross-motions for summary judgment are before the court. For the following reasons, Janet Sei's motion for summary judgment is denied and the United States' motion for summary judgment is granted.

**I.    Background**

The following facts are drawn from the parties' joint statement of material facts and are undisputed. Janet and Keith Sei were married on December 1, 1984. During their marriage, Keith founded four businesses: (1) Midwest Surgical Assistants, Inc.; (2) The National Surgical Billing Association, Inc.; (3) Midwest Surgical Assistants Northeast Region, Inc.; and (4) Midwest Surgical Assistants Mid America Region, Inc. (collectively, "the businesses"). Starting in 1998, Keith failed to pay employee withholding taxes from the businesses.

Prior to 2001, the Seis owned a home in South Barrington. Around September of 2001, the Seis purchased a home at 1309 Montclaire Place in Schaumburg, Illinois. Although Janet

contends that she was unaware that she and Keith owned the Schaumburg home as tenants-by-the-entireties, the deed for the Schaumburg home stated that the Seis owned the property as tenants-by-the-entireties. No documents exist which state that the Seis did not own the Schaumburg home as tenants-by-the-entireties. After the Seis purchased the Schaumburg home, they sold the South Barrington home and used the proceeds to pay off the mortgage on the Schaumburg home.

In 2001, Janet learned that the four businesses were having problems paying their federal tax liabilities. On or about May 3, 2002, both of the Seis executed a $285,000 mortgage on their home in Schaumburg. No documents exist which reflect that Janet bought out Keith's interest in the home at any time.

On May 13, 2002, May 14, 2002 and December 9, 2002, under 26 U.S.C. § 6672, a delegate of the Secretary of the Treasury made assessments against Keith for a total of $1,306,144.78 (including interest and penalties) as a responsible person for the businesses who had failed to collect or truthfully account for and pay over income and Federal Insurance Contribution Act ("FICA") taxes withheld from the businesses' employees. Keith received notices of the assessments on or about the time that they were made. In addition, notices of federal tax liens were filed with the Recorder of Deeds for Cook County relating to the assessments.

The Seis divorced and a Judgment of Dissolution of Marriage was entered in March of 2003. The judgment stated that title to the Schaumburg home is "presently held jointly by the parties." A quit claim deed that was contemplated by the judgment stated that Keith would deliver a properly executed quit claim deed to Janet "conveying to [Janet] all of [Keith's]

interest, if any, in the title to the [Schaumburg home]." No quit claim deed of any type relating to the Schaumburg home was executed by Keith or recorded by Janet.

On August 4, 2003, the Schaumburg property was sold. The Settlement Statement which described the sale listed the sellers as Keith and Janet Sei. The escrow agent released half the proceeds of the sale ($113,001.40) to Janet. Keith owes the government $1,306,144.78 in back taxes. In the present action to quiet title, the parties disagree as to who gets the remaining half of the proceeds from the Schaumburg home.

## II. Discussion

### A. Standard for A Motion For Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id*.

### B. Keith and Janet's Claim to the Proceeds

Keith has been served and has failed to appear and defend, and the government has submitted admissible evidence showing that he owes the government $1,306,144.78. The court

thus finds that entry of a judgment in the amount of $1,306,144.78 against Keith is warranted. *See* Fed. R. Civ. P. 55(b).

Janet claims that she is entitled to 100% of the proceeds from the sale of the Schaumburg home and thus seeks a declaration that the federal tax liens attaching to Keith's assets did not attach to the Schaumburg home. In support, she contends that: (1) she purchased Keith's interest in the Schaumburg home when she and Keith took out a $285,000 mortgage on that property; (2) when she allowed Keith to "withdraw" his half-interest in the property by giving him the proceeds from the $285,000 mortgage, he lost his right to reach the remaining value in the property; (3) by "withdrawing his equity in the property" by taking out the mortgage, any interest that Keith may have technically retained in the property was held in trust for Janet; (4) Keith improperly used his influence as Janet's spouse to convince Janet to allow him to "withdraw" money from the property even though he knew that the IRS was on the verge of filing liens; and (5) at the time the liens were created, Keith had no interest in the property under general equitable principles.

If any person liable to pay any tax fails to pay after the United States demands payment, the amount of the tax "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. This lien arises upon the assessment of the tax and continues "until the liability . . . is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

In this case, three liens came into existence on May 13, 2002, May 14, 2002, and December 9, 2003. The United States asserts that the three liens attached to Keith's interest in the Schaumburg property so it is entitled to half of the proceeds from the sale of the property.

*See Municipal Trust and Savings Bank v. United States*, 114 F.3d 99, 101 (7th Cir. 1997) (a tax lien "follows any property substituted for what the taxpayer owned, provided that the chain of substitution can be traced"). For the following reasons, Keith owned an interest in the Schaumburg home when the liens came into being so the United States is entitled to Keith's half of the house proceeds.

First, regardless of whether Janet and Keith held the property as tenants-by-the-entireties or as tenants in common, it is undisputed that both Keith and Janet's names were on the title to the home from the time they purchased the home to the time it was sold. Moreover, both Janet and Keith's names were on the $285,000 mortgage. The court also notes that despite the fact that Janet and Keith's divorce decree specified that she was to ultimately get the house, the actual decree stated that the house was owned jointly and directed Keith to execute a quit claim deed. Keith never did so. Thus, regardless of Janet's subjective beliefs regarding her interest in the house and the effect of giving Keith all of the proceeds from the $285,000 mortgage, the fact remains that Janet and Keith jointly owned the house and jointly took out a $285,000 mortgage on that house, and Keith never quitclaimed his interest in the house to Janet.

Second, Janet's characterization of the legal effect of giving Keith the proceeds from the mortgage is simply incorrect. Janet and Keith took out a mortgage as tenants-by-the entireties and Janet gave the proceeds of the joint loan to Keith. No documents exist which show that Janet was purchasing Keith's interest in the property, and no documents were ever recorded which showed that Janet was the sole owner of the property. *See* 740 ILCS § 80/2 (all sales of land must be made in writing); 765 ILCS § 5/30 (all deeds and title papers are void as to creditors until they are recorded). Moreover, as noted above, Keith and Janet's names were both on the

title to the home and the settlement statement executed when the house was sold in August of 2003 states that Keith and Janet were the sellers.

Third, Janet claims that when Keith took the proceeds from the mortgage, any interest that he may have technically retained in the property was held in a resulting or constructive trust for Janet. Under Illinois law, a court may impose a trust when none exists to effectuate the parties' intent, and a resulting trust can be established where one individual pays for property but the title is placed in another's name; the second individual is deemed to hold the property in trust for the first. *Scott v. C.I.R.*, 226 F.3d 871, 874 (7th Cir. 2000); *Dunham v. Kisak*, 192 F.3d 1104, 1108 (7th Cir. 1999). In Illinois, the pivotal question in determining whether a resulting trust has been created is whether the nominal purchaser intended the actual payor to have an ownership interest in the property. *Scott v. C.I.R.*, 226 F.3d at 874. To use a resulting trust to rebut recorded legal title, Janet "must demonstrate the requisite intent to create a [resulting] trust through clear and convincing evidence that is unequivocal both as to its existence and to its terms and conditions." *Id*. (internal citations and quotations omitted). Furthermore, "If the evidence is doubtful or capable of reasonable explanation upon any theory other than the existence of a trust, it is insufficient." *Id*.

Here, the court agrees with the government that the facts do not support the creation of a resulting trust. There is no nominal purchaser and actual payor as Keith and Janet both executed the mortgage. Thus, this is not a situation where one person gave the consideration for property and the other person held the title. Both Janet and Keith owned the home and they both took out a mortgage on that home.

With respect to a constructive trust, Illinois limits the imposition of a constructive trust to situations where specific acts of wrongdoing such as fraud, breach of fiduciary duty, duress, coercion or mistake have occurred. *Bressner v. Ambroziak*, 379 F.3d 478, 483-84 (7th Cir. 2004). Janet appears to be arguing that Keith duped her into handing over the proceeds from their joint mortgage, and/or led her to believe that by giving him the money, she was selling him his interest in half of the house. The problem with this argument is that Janet is raising it in a tax case brought by the United States.

Specifically, to the extent that a constructive trust exists (an issue upon which the court makes no finding), it would run between Janet and Keith. In other words, Keith would be holding half of the mortgage proceeds in trust for Janet, and to get those proceeds, Janet would have to sue Keith to try to get the money back. As matters stand, however, Keith and Janet jointly owned the Schaumburg property, and Janet and the United States are disputing who gets half of the proceeds from the sale of that property. Any constructive trust would be for half of the mortgage proceeds that Keith apparently received, so even if a constructive trust exists, it cannot help Janet in this case directed at the proceeds of her home.

Next, Janet argues that Keith improperly used his influence as Janet's spouse to convince Janet to allow him to "withdraw" money from the property even though he knew that the IRS was on the verge of filing liens. This argument, like Janet's constructive trust argument discussed above, is irrelevant for the purposes of this action. If Janet wishes to raise some sort of state law tort claim against Keith to get back half of the money from the mortgage, she may do so. However, as matters stand, Janet elected (in a decision that she must profoundly regret) to sign a mortgage with Keith and to give him all of the proceeds from that mortgage. This action

concerns the proceeds from the sale of the house, and Janet has not provided any explanation as to how this court has jurisdiction over a dispute regarding the proceeds from the mortgage.

Finally, Janet contends that at the time the liens were created, Keith had no interest in the property under general equitable principles. This argument is unavailing for the same reason that Janet's trust arguments fail; this case is about the proceeds from the sale of the house, not the proceeds from the mortgage.

In sum, the court genuinely regrets that Janet's divorce from Keith and the couple's financial dealings have left Janet in an unfortunate position vis-a-vis the house proceeds. The court, however, cannot dispense moral justice. All it can do is consider the facts of this case and the controlling law. When it does so, Janet cannot prevail as to the United States' claim to the house proceeds. Accordingly, Janet's motion for summary judgment is denied and the United States' motion for summary judgment is granted.

## Conclusion

For the above reasons, Janet's motion for summary judgment is denied and the United States' motion for summary judgment is granted. The clerk is directed to enter a Rule 58 judgment and to terminate this case.

DATE: August 22, 2005

                                                             _Blanche M. Manning_
                                                             Blanche M. Manning
                                                            United States District Judge